Can you explain whether we have jurisdiction to even be here in this case? Are you going to ask us to reevaluate the facts? Under this court's case law, you review the question of prevailing party de novo, and you determine whether or not the legal determination as to whether or not Mr. Germinaro was or was not a prevailing party. Mr. Carpenter. I'm sorry? In both Vaughn and Kelly, which is where you, in cases you're citing for this proposition, this is a question of law. You were on Vaughn, weren't you? I was. But not on Kelly. On Kelly. In Vaughn, for example, the whole question of what was the proper legal standard was at stake. Yes. Right. So the question was, you know, what constitutes a prevailing party? Can someone who earns a remand ever be a prevailing party? And there was a heated discussion. There's still, there's several heated discussions about that. And so the legal issue in that case was exactly that. What's the shape of the law? And one can look at Kelly as having raised a similar question. Now, I think Kelly is probably your strongest case to say there's jurisdiction, because in Kelly, it looked like they were taking the settled law, right, and applying it to the facts. Yes. But nonetheless, they sustained jurisdiction. So I think what Judge Rana was asking is, you know, once the law is settled as to what constitutes a prevailing party, then you are applying the settled law to the facts of a given case. And so when the CAVC says, well, yes, indeed, there was a remand here. But we don't think the remand was speaking in any way, shape, or form as for showing that there had been a flaw committed by the agency that wasn't being remanded for agency error. I think that's the gist of the government's case here. And what I took Judge Rana to be asking you is that, if that being the case, your main beef would be that you think the CAVC messed up when they said the purpose of the remand was to find the fact to determine whether there had been agency error. That's correct, Your Honor. And we believe that that is… You think that's a question of law? Yes. And that question of law is presented by the legal determination that it was essentially a nonjudicial function to approve a joint remand that required the board to follow the applicable law. That was an administrative error. When the court… Well, you know, in ordinary cases or normal cases, some cases, what happens is we get a whole record brought up here and, you know, splayed out in front of us. And so we can look in that record and we can make an assessment about what was going on. But in this case, as I understand it, correct me if I'm wrong, there was no record presented to the CAVC. I think that was their point, was we don't have a tool. We don't have the tools here. So it looks to us like there's an open question here as to whether or not there was a question presented to the CAVC that it, you know, overlooked. I'm not sure I understand about the record. There was a record of proceedings that was filed with the court in the matter up to the time that the joint motion was submitted. The joint motion, if you will, circumvented the ultimate consideration of that record by the court. The court accepted the joint motion of the parties. And in that joint motion, the government agreed that the board had not addressed a specific VA examination. What I'm trying to get at is the sentence in the decision of the CAVC. Unfortunately, the appellant overlooks a fatal problem in this argument. There is no record before the court. And they were citing back the other case in which there had been a record which allowed them to make an assessment. What were they talking about when they said, unfortunately, there's no record before the court? Well, frankly, Your Honor, I don't know. You're more expert at this than I am, Mr. Carpenter. You're asking me what was the court referring to by no record. In every proceeding, the VA by rule is required to submit a record. And that is the record upon which the matter proceeds before the court. Now, this is an Achilles heel either of your argument or of the board. Because when the board says without a record, of course, it's impossible for the court to determine whether a claim for TIU was reasonably raised by the record such that the board committed error by not discussing it. So are you telling me that this ground, the government actually relies on this ground somewhat in its argument as to why you're going to lose? What am I to make of this? Well, Your Honor, the standard proceeding in matters before the Veterans Court are to attempt to resolve an appeal by way of negotiated settlement, if you will, by the submission of a joint motion for remand. In that case, the record, as it were, is not considered by the court, but the motion is. And so what was before the court was the joint motion. And in the joint motion that was prepared by the VA, the VA specifically referred to a VA examination that implicated the entitlement to an extra schedule or rating based upon the VA examiner's observation about his inability to continue working based upon his service-connected disabilities. This court's decision in Comer explained and elaborated that a specific claim is not required for consideration of a total rating based upon unemployability based upon this court's holding in Roberson. As a consequence, what was before the court was the joint motion, which expressly referred to the record that was before the board and acknowledged a specific portion of that record and said to the court, on the basis of this, we believe that this matter has to go back for reconsideration in the first instance by the Veterans Court. But in case law, we generally require at this point some kind of admission of administrative error, don't we? Yes, Your Honor, but this court's case law... And so you're arguing, well, there's an implicit... Now we're back to Judge Reyna's question. To assess whether something is implicit, don't we have to get into the facts? As they were undisputed before the Veterans Court, and all that was before the Veterans Court was a single motion, and that motion was ruled on by the court that vacated the board's decision. I'm suggesting to you that, as a matter of law, it is not reasonable for any court to vacate a board decision, an agency decision, for whimsy or because the agency asked them to. In this case, the agency said the board failed to address the underlying issue of entitlement to extra scheduler rating based upon specific evidence, which the VA pointed out, to the court below that was before the board. And therefore, those are undisputed facts, Your Honor, and they either raise the question of Roberson and Comer for a claim that was reasonably raised by the evidence, and to me that is clearly what was conceded by the government, and this court must simply pass judgment on that, as the court below did. The court below did and said, no, we don't think that that entitles you to prevailing party. In the Davis case, essentially the same facts were presented. The only difference in Davis was that the issue of TDIU had already been decided by the board, and this court reasoned in Davis, well, we're not going to just give you prevailing party because you get another opportunity to look. In this case, there was no look in the first instance. I think you'd have a stronger case if there was a remand, but this was a joint remand. It was a remand by the parties. So how can that make you a prevailing party in this instance, number one, without us having to fill in the facts as to whether you were prevailing or not? Because those facts are identified within the terms of the document that was relied upon by the court to make its determination, both to vacate the board decision based on the joint motion of the parties, and to make its determination on whether or not Mr. Germanaro was or was not a prevailing party. Well, I guess it also takes me to the next question. How does a joint motion to remand cause a material change in the status of the parties and the relationship of the parties? In this case, it materially altered the relationship of the parties because Mr. Germanaro's consideration of the rating of his service-connected disabilities was final. Based upon this joint motion and based upon the imprimatur of the court, that board action has been vacated and they have been directed to re-adjudicate it with consideration of extra scheduler rating under 4.16a. That materially alters the legal relationship between the board, excuse me, the VA slash board and Mr. Germanaro. The decision that was appealed was presumptively final if affirmed. It was not affirmed. It was vacated and set aside and ordered by the Veterans Court to be re-adjudicated. I'd like to save the rest of your time, Mr. Carpenter. Thank you very much. Mr. Goodman. Good morning, Your Honors. May it please the Court. First of all, with respect to the record, my understanding of how things work at the Veterans Court is the VA sends the record of the proceedings before the board to the veteran or the veteran's representative. And at that point, the parties have to agree on what's in the record and then they formally submit something to the Veterans Court and it's a docket entry and the Veterans Court has received the record. Here, the Veterans Court never received the record because the parties jointly agreed to remand the case before that had ever happened. And that's what the Veterans Court was saying is as a matter of impossibility, the Veterans Court can't review the record to see whether something's been reasonably raised by it because the Veterans Court simply didn't have the record. That's sort of a catch-22 for people who agree in a settlement to a remand, isn't it? It is. The procedural posture is important because what it shows here is that Mr. Germinara What do you do about the catch-22? We have policies. We want to promote settlement. We want to have harmony. And so they say, well, joint motion together, let's have a remand. And then it comes up to whether or not there was a question that was appropriately raised by the record below and there's no record to look at. It points out that what Mr. Germinara is seeking here is really reinvigoration of the Catalyst Theory because what he did is he went to the Veterans Court and he said, there's been an error. There's nothing for you to look at to decide that there's been an error, but you can tell there's been an error because I filed something at the Veterans Court and as a result of that, the VA has agreed to voluntarily remand the case. So it's really the Catalyst Theory all over again that the Supreme Court, of course, rejected in Buchanan because the Supreme Court said a voluntary change in the defendant's position isn't what we're looking for. Aren't I right under Roberson on the other cases? If a veteran goes in front of, I guess, first the R.O. and then comes out of the R.O. and gets to the BVA and they've alleged facts that could support a claim to TDIU, but they don't actually ask for it. The board is obligated once it sees those facts to decide whether or not there is a TDIU claim. Absolutely. Aren't I right? And so my understanding was Mr. Carpenter was saying on behalf of his client is he thinks those facts are in the record and he thinks those facts were presented to the BVA. And if he's right and the BVA didn't adjudicate whether they entitled him to TDIU, then that would be agency error. Yep. I mean, if the remand had been, well, wait a second, we think the facts disclose a prima facie case or whatever you want to call it for TDIU, you fail to adjudicate it, then go back under former employees, he'd have a leg up, right? Yes. And Mr. Germinaro could have pushed that at the Veterans Court and tried to seek a decision from the Veterans Court that says that the board had erred because TDIU was raised and then not. That's what I was getting at. But his flaw was that he said, well, I'm a good fellow and I'll consent to a hug and kiss remand here. I think I would turn that around a little bit and say it was not a flaw. It was the parties agreeing to save judicial resources, time, money, everybody's time and money, and send it back to the board so that he can get that addressed in the first instance. Of course, the VA's position here is that TDIU wasn't reasonably raised by the record. And he points to a single medical examination. There's no record for this court to consider, and this court can't touch the facts anyway. But the parties dispute that question, whether TDIU was reasonably raised. What happened is the parties agreed, let's not ask the Veterans Court to address this question. Let's send it back and let the board address it in the first place. And at the board, I'd point out, Mr. Germinaro can raise additional arguments, can present additional material, new evidence. So he's really getting another bite of the apple. So it's not just Mr. Germinaro doing it out of his kindness. It's everybody agreeing congenially to remand the case to the board, to let the board decide in the first instance whether TDIU has been raised. Just briefly, I did want to address the jurisdictional point that Judge Reyna addressed earlier. This case is an application of a lot of facts. It's clear from both of his briefs that what Mr. Germinaro is asking the court to do is to say, in his individual case, he's a prevailing party because you take the established law and apply it to his case. What's the difference between this case and Kelly? Well, in Kelly, this court found that there was a legal error. There was a legal error in what constitutes an appropriate error. There's no question here. In his brief, he doesn't argue that there's been a legal error made at all. I mean, Kelly looked to me like an application of a lot of the facts, and they simply were relying on Vaughn to say, we review all this to know. Well, if that's the case. There may have been an underlying dispute about the shape of the law, because there was a vigorous dissent in that case that was raising the legal point. The court was careful in Kelly to characterize what it found as being a legal error and not an application of a lot of facts. If the court had, of course, gone beyond its jurisdiction in Kelly, that would be no reason for the court to continue to do so. But here, it's clear that he's only asking for an application of a lot of facts explicitly, and he's saying that the reason for that is that prevailing party status is a de novo question this court can review. But, of course, it's not. Let me ask you this. In front of the BBA, when the question is whether or not the record developed through the RO as it comes up to the BBA, as I was saying earlier, does that record have enough data points in it to suggest a TDIU claim? Is that question itself a fact question or a law question? A fact question. And that's treated as such by the CAVC in the system there? Yes, and that's the reason the CAVC remands these cases to the board to, in the first instance, decide that fact question of whether TDIU was reasonably raised. So the board is supposed to decide it first, and then the Veterans Court reviews that, and then this court reviews that. Mr. German is asking the court to reach that factual question in the first instance. That's why we say it's beyond its court's jurisdiction. He's asking it's a double factual question in a way. He's asking whether or not the data points are there, and if so, do the data points add up? Yes. If there are no further questions, we respectfully request that this court dismiss the appeal for lack of jurisdiction or affirm the decision of the Veterans Court. Thank you. Thank you, Mr. Goodman. Mr. Carpenter. Direct the court's attention to the joint appendix at page 39 in the joint remand prepared by the government. In the second full paragraph. 30 notes, slow down. Oh, I'm sorry. 30 notes. Second paragraph. Second full paragraph. The record reflects. The record reflects, yes. You'll see that there are various citations to the record. RBA is the record of proceedings before the agency. That is the document that the government referred to when it was speaking that is prepared and shared with the appellant. There are one, two, three, four, five different specific record citations that are made there. Now, those are the records that the government conceded raised the question of whether or not there was under Roberson and Comer a duty for the board to have considered that. In addition to that, it is noted in the first sentence at the end that from January 1, 2008, Mr. Germanaro's post-traumatic stress disorder rating was 70%. That fact alone triggers the application of the applicable regulation 4.16a because he meets the scheduler requirements for entitlement to extra scheduler consideration. Now, if the court were to adopt the view taken by the Veterans Court that these records were not before them and, therefore, they couldn't make the determination, that underlines the policy of the court below to have joint resolution. We are required by rule to have a central legal staffing conference based upon a memorandum of law that is prepared by the issues which are to be raised in order to achieve settlement. And so if you get the result, which is precisely what happened here, then you're excluded from consideration of Equal Access to Justice Act fees because the record's not in front of the court. The question here is whether the record as conceded by the government constituted error. It constituted error under this court's case law in Romer as clarified and explained in Cohen. Unless there's any further questions from the panel. Thank you, Mr. Carpenter. Our next case is Frederick versus the Department of Veterans Affairs.